IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLYNN WARD, | No. CIV S-09-2542-CMK-P |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| OROMDE, et al., | |
| Defendants. | |
| _____/ | |

       Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court is defendants' motion for summary judgment (Doc. 30).

/ / /

/ / /

/ / /

/ / /

/ / /

# I.  BACKGROUND

This action concerns plaintiff's claim of excessive force applied in connection with his transport to an outside medical facility on August 14, 2008.  As to the remaining defendants – Oromde and Kirshner – plaintiff claims: (1) Oromde applied handcuffs that were too tight and used a "torturous black box device" over the handcuffs during transport; and (2) Oromde and Kirshner kept plaintiff in a hot van following his medical appointment even though plaintiff was on "heat alert" medications.

Defendants' evidence in support of summary judgment consists of excerpts from plaintiff's deposition, as well as the declarations by the defendants and other witnesses. Defendants' evidence reflects the following:

1. On August 14, 2008, plaintiff was housed at California State Prison – Sacramento ("CSP-SAC").

2. At the time, plaintiff was taking psychiatric medications classified as "heat alert medications" due to possible side effects inhibiting the body's natural cooling mechanisms (i.e., inhibits sweating).

3. On August 14, 2008, plaintiff was scheduled for a pre-operative medical appointment at U.C. Davis Medical Center; plaintiff was taken from his cell to the Receiving and Release, an area of the prison for inmate departures.

4. At Receiving and Release, defendant Oromde placed handcuffs on plaintiff, making sure that his index finger fit between plaintiff's wrists and the handcuffs.

5. While putting the handcuffs on, plaintiff felt a pinch and jumped; Oromde asked "What?" and plaintiff responded, "Man, it seems like it tight."

6. Oromde did not believe the handcuffs were too tight as he had just checked the tightness with this index finger and found the fit appropriate.

7. In response to plaintiff's complaint, Oromde clicked the handcuffs one click tighter and said, "See, I can go more if I wanted to.  If it don't kill you, it's going to stay that way."

8. Plaintiff did not mention the handcuffs again until his return to the prison.

9. According to Oromde, the space between the handcuffs and plaintiff's wrist represented by the width of his index finger would have allowed for two or three more clicks without the handcuffs becoming too tight.

> 10. After putting on the handcuffs, Oromde then placed the remainder of the required security equipment on plaintiff (consisting of leg restraints, waist restraints, and a "black box" devise over the handcuffs; the black box device is designed to prevent inmates from picking the locks on handcuffs.
>
> 11. Once the restraints were in place, plaintiff and three other inmates were taken by van for an approximately 30-minute ride to U.C. Davis Medical Center.
>
> 12. At about 10:45 a.m., following their medical appointments, plaintiff and two of the other inmates were placed in the van where they waited for the fourth inmate to conclude his appointment; Oromde and one other officer waited in the van with plaintiff and the other inmates.
>
> 13. The inmates were placed in the van to wait because Oromde felt it was the only secure location.
>
> 14. Once in the van, the ignition was turned on and the air conditioner started; at some point, the van was moved to a shady location; the inmates and officers waited in the van in the parking lot with the air conditioner running until approximately 12:45 p.m., at which time the fourth inmate concluded his appointment and the inmates and officers all returned to the prison.

As to Kirshner, defendants state:

> Defendant Kirshner did not speak to the officers between the time the officers left CSP-SAC on their way to U.C. Davis Medical Center, and the time they returned to CSP-SAC. (UF 23). Defendant Kirshner did not talk to Ward at all that day and did not make the decision to keep the inmates in the van after the conclusion of their medical appointment. (UF. 23).

According to defendant Kirshner's declaration, he was the Transportation Sergeant at CSP-SAC on August 14, 2008, and was defendant Oromde's supervisor.

As to injuries allegedly sustained by plaintiff as a result of the application of handcuffs and the black box device, defendants submit the declaration of S. Nangalama, M.D., a prison doctor at CSP-SAC. Dr. Nangalama states that he reviewed plaintiff's medical file and that, in his opinion, plaintiff's carpal tunnel syndrome was not caused by the use of security devices on August 14, 2008.

/ / /

/ / /

## II.  STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2  of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
3  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and
4  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict
5  for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

6  　　　　　In the endeavor to establish the existence of a factual dispute, the opposing party
7  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
8  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
9  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
10 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
11 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
12 committee's note on 1963 amendments).

13 　　　　　In resolving the summary judgment motion, the court examines the pleadings,
14 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
15 any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See
16 Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed
17 before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
18 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
19 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
20 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
21 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
22 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
23 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
24 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
25 / / /
26 / / /

### III. DISCUSSION

In their motion for summary judgment, defendants argue the application of restraints was appropriate under the circumstances because: (1) de minimus force was used; and (2) plaintiff suffered only de minimus injury. Defendants also argue that the time plaintiff was held in the van did not amount to cruel an unusual punishment because: (1) plaintiff was held in the van for reasons of safety and security; and (2) plaintiff suffered no injury as a result of being held in the van; and (3) the conditions in the van, along with the time plaintiff was kept in the van, did not constitute an extreme deprivation.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

/ / /

/ / /

/ / /

/ / /

### A. Application of Restraints

When prison officials stand accused of using excessive force, the core judicial inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). The lack of injuries is also probative. See Hudson, 503 U.S. at 7-9. Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. See Whitley, 475 U.S. at 321-22.

Citing Hudson, 503 U.S. at 6-7, 9-10, defendants correctly state that there can be no Eighth Amendment violation where, objectively, the use of physical force was de minimus, and that the key question is whether, subjectively, force was used in good faith for a legitimate penological purpose, or applied maliciously and sadistically to cause harm. Defendants argue that plaintiff cannot prevail here because evidence establishes that plaintiff suffered only de minimus injury and because only de minimus force was used. The court agrees.

///

///

1.     Extent of Plaintiff's Injuries

As to plaintiff's injuries, plaintiff stated in his deposition that his only alleged injury as a result of application of the handcuffs and black box device were that his wrists painfully swelled and that his thumbs went numb. The court agrees with the weight of authority cited by defendants indicating that complaints of bruising, swelling, scrapes, and pain, without evidence of more serious injury, indicate de minimus injury at best. See Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000) (discussing bruises); Wertish v. Krueger, 433 F.3d 1062 (8th Cir. 2006) (discussing scrapes and bruises); Foster v. Metro. Airports Comm'n, 914 F.2d 1076 (8th Cir. 1990) (discussing pain). By plaintiff's own admission at his deposition, he suffered no more than pain, swelling, and some bruising. The court finds that these injuries are de minimus.

In his opposition, plaintiff contends that he required carpal tunnel surgery as a result of injuries to his wrist caused by the handcuffs. Plaintiff's evidence, however, belies this contention. A February 19, 2010, clinic note prepared by John J. Casey, M.D. of Doctor's Hospital, indicates that plaintiff had a one-year history of upper extremity pain, tingling, and numbness for which carpal tunnel surgery was recommended. This document indicates that plaintiff's condition arose sometime in early 2009 – six months after handcuffs were used on August 14, 2008 – undercutting any causal relationship to the August 14, 2008, application of handcuffs.

This analysis is consistent with Dr. Nangalama's declaration offered in support of summary judgment. The doctor specifically notes that plaintiff claims his injury was the result of the acute trauma allegedly experienced on August 14, 2008. Plaintiff's records, however, indicate that plaintiff's complaints regarding his carpal tunnel syndrome were gradually progressing. In other words, plaintiff's carpal tunnel syndrome was not the result of an acute event. The doctor also notes plaintiff's medical records indicating that he did not begin regularly complaining about wrist pain until March 2009, and that, upon returning to the prison on August 14, 2008, he did not make any complaints regarding his wrists.

1  Plaintiff's claim that his carpal tunnel syndrome was caused by the August 14,
2  2008, application of restraints is simply not borne out by the undisputed evidence. Rather, the
3  undisputed evidence indicates that plaintiff suffered, at worst, de minimus injury as a result of the
4  application of restraints. For this reason alone, summary judgment in favor of Oromde on the
5  issue of use of restraints is appropriate.

6        2.    Level of Force Used

7  The court also agrees with defendants that the undisputed evidence indicates that
8  the level of force used was de minimus. First, Oromde states that he left a gap between the
9  handcuffs and plaintiff's wrists equal to the width of his index finger. Oromde states that this
10 gap would allow for two to three additional clicks of the handcuffs without becoming too tight.
11 After plaintiff complained, Oromde clicked the handcuffs once more and plaintiff did not
12 complain of tightness again. These facts do not indicate the use of excessive force. Instead, they
13 show that Oromde used that force (application of restraints) which was necessary to maintain
14 security during the transport and that the force was the least that could be used under the
15 circumstances. In particular, when first placed on plaintiff, the handcuffs could not have been
16 too tight because Oromde was able to click the handcuffs one time after plaintiffs initially
17 complained. Following this one additional click, plaintiff did not complain again, indicating that
18 even the additional click did not cause excessive tightness. In other words, had the handcuffs
19 been too tight initially, Oromde would not have been able to click them again and/or plaintiff
20 would have complained of increased pain after the additional click.

21     **B.**    **Retention in Van**

22 When an inmate challenges the conditions of his confinement, the court must
23 analyze each condition separate to determine whether, objectively, that specific condition
24 violates the Eighth Amendment. See Toussaint, 801 F.2d at 1107. It is possible that some
25 conditions of confinement may constitute a violation in combination when each would not do so
26 alone. See Wilson v. Seiter, 501 U.S. 294, 304 (1991). The court must also consider the amount

of time the inmate was subjected to the condition.  See Hutto v. Finney, 437 U.S. 678, 686-87 (1978).  Subjectively, the inmate must establish that prison officials acted with deliberate indifference to an unconstitutional condition of confinement.  See Farmer, 511 U.S. at 834.

Here, plaintiff claims that defendants Oromde and Kirshner are liable as a result of his being required to wait in the van.  Turning to defendant Kirshner first, the court finds no basis of liability.  According to his undisputed declaration, Kirshner was a supervisory official in charge of inmate transportation and that, on August 14, 2008, he was supervising defendant Oromde.  Kirshner never had any direct involvement with plaintiff that day, and did not speak with any of the officers involved in the inmate transport to U.C. Davis Medical Center.  The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Because the evidence indicates that Kirshner had no direct involvement in the events of August 14, 2008, he is entitled to summary judgment.

Regarding Oromde's decision to have plaintiff and the other inmates wait in the van for approximately two hours while the fourth inmate completed his appointment, defendants argue that the decision served legitimate penological interests, that the conditions in the van and the amount of time spent subject to those conditions did not constitute an extreme deprivation of life's necessities, and that plaintiff suffered no injury as a result of waiting in the van.  The court agrees.

The evidence shows that the conditions in the van did not constitute an extreme deprivation.  The evidence indicates that the air conditioner was running the entire two hours and that, for most of the time, the van was parked in the shade.  While plaintiff may certainly have been hot and uncomfortable, the evidence does not indicate that he was deprived of any of life's necessities during the two-hour wait in the van.

As to injury, plaintiff appears to rest his claim on the possibility that he could have been severely injured due to his use of "heat alert medications." The evidence fails to establish, however, that plaintiff's fear came to pass. In fact, plaintiff's medical records reveal no complaints of injury related to the wait in the van. Plaintiff does not present any evidence to the contrary.

### IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment (Doc. 30) is granted; and

2. The Clerk of the Court is directed to enter judgment in favor of defendants and to close this file.


DATED: September 12, 2011

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE